[No. 26739. Department Two. December 7, 1937.]

MILTON R. LINCOLN, *Respondent,* v. NEW YORK LIFE INSURANCE COMPANY, *Appellant.*[1]

*Wright, Jones & Bronson,* for appellant.

*Edgar P. Reid,* for respondent.

[1]Reported in 74 P. (2d) 14.

MILLARD, J.—A life insurance policy issued by the defendant June 19, 1924, upon the life of the plaintiff, obligated the insurer to pay (in addition to indemnity in case of death) to the insured one hundred dollars monthly,

". . . during the lifetime of the Insured and also to waive the payment of premiums, if the Insured becomes wholly and presumably permanently disabled before age 60, subject to all the terms and conditions contained in section I"

of the policy.

The pertinent provisions of section I of the insurance contract read as follows:

"Disability shall be deemed to be total whenever the Insured is wholly disabled by bodily injury or disease so that he is prevented thereby from engaging in any occupation whatsoever for remuneration or profit.

. . .

"Disability shall be presumed to be permanent,— (a) Whenever the insured will presumably be so totally disabled for life; or— (b) After the Insured has been totally disabled for not less than three consecutive months immediately preceding receipt of proof thereof.

. . .

"The Company may from time to time demand due proof of the continuance of total disability, but not oftener than once a year after it has continued for two full years. Upon failure to furnish such proof, or if at any time it shall appear to the Company that the Insured is able to engage in any occupation for remuneration or profit, no further income payments shall be made nor premiums waived."

When the policy was issued to him in 1924, the plaintiff, who was engaged in manual work on a ranch, was twenty-three years of age. This was the only work in which the plaintiff had ever engaged up to that time. About one year previous to the issuance of the policy he graduated from high school, his course of study there being scientific.

In September, 1924, plaintiff joined the United States Marine Corps. On March 1, 1925, a bullet, accidentally discharged from a forty-five caliber pistol, entered his left chest and passed through the scapula. The bullet punctured his left lung, and the injury therefrom to the heart muscle of the left ventricle resulted in the formation of scar tissue of the heart muscle with a dense band of adhesions attached to the heart muscles. The plaintiff was confined in the United State Naval Hospital until August 7, 1925. On that date, he was discharged from the Marine Corps as totally disabled.

The defendant received the proof of the total permanent disability of the plaintiff in the manner and form as required by the insurance contract, and classified the plaintiff as having received a bodily injury rendering him wholly and presumably permanently disabled and preventing him from engaging in any occupation whatsoever for remuneration and profit. Each month after the injury, the defendant paid to the plaintiff one hundred dollars monthly to and including December 31, 1935. The defendant refused to pay to the plaintiff subsequent to January 1, 1936, any benefits under the total and permanent disability provisions of the contract. This action was instituted to enforce payment of benefits under the disability provision of the insurance contract.

The cause was tried to the court, which found that the plaintiff, since the incurrence of the injury, has been and now is totally, permanently, and continuously disabled from following or engaging in any physical activity; that his disability is total and permanent, and that he is prevented thereby from engaging in any occupation whatsoever for remuneration or profit. Judgment was entered in favor of the plaintiff. Defendant appealed.

Appellant's sole contention is that the evidence is insufficient to establish total disability of the respondent during the period in litigation as the term "total disability" is defined in the policy. Section I of the policy defines "total disability" as follows:

"Disability shall be deemed to be total whenever the Insured is wholly disabled by bodily injury or disease so that he is prevented thereby from engaging in any occupation whatsoever for remuneration or profit."

The trial court found—and that finding we may not disturb unless it clearly appears that the evidence preponderates against that finding—that the respondent was, by bodily injury, and now is, wholly disabled so that he is prevented from engaging in any occupation whatsoever for remuneration or profit.

It is unnecessary to review all of the evidence, which overwhelmingly sustains the finding of the trial court. Under date of January 30, 1936, a few weeks subsequent to discontinuance by appellant of the payments to the respondent, the appellant's medical examiner, who resides in the same city as the respondent and for whom he has been the medical attendant or adviser since September, 1925, made a written report to the appellant in which he recited that the respondent was then wholly disabled; and that, by reason of his disability, he had been prevented since March 1, 1925, from engaging in any occupation whatsoever for remuneration or profit. Appellant's medical examiner gave as his opinion, in answer to the question whether the insured by reason of the disability will be permanently, continuously, and wholly prevented thereby for life from pursuing any and all gainful occupations, that the respondent was "permanently, continuously, and totally disabled for life."

On February 13, 1936, the appellant requested the medical examiner to advise it in detail of the condition

then present preventing the respondent from "performing some work," and the date the medical examiner last saw the respondent professionally. Under date of April 21, 1936, appellant's medical examiner replied that it had always been his contention that the respondent could do some work if he had utilized the money he had been receiving from the appellant to obtain the necessary training. He added, however, that it was impossible for the respondent to do his usual work in the woods, or any work where he must exert himself, such as lifting, fast walking, or mental excitement.

There is nothing in the letter of the appellant's examiner to support the position of the appellant. That physician not only realized that he was an interested witness, but he so stated to his company. He urged his company to communicate with the respondent at once, as, in his anxiety, the respondent would likely retain an attorney to enforce payment of his claim.

This medical examiner testified that, as one of the appellant's medical examiners, he made the usual reports to his company as a result of an examination of the respondent for a number of years. He talked with the respondent about doing some clerical work, but he did not recommend that respondent undertake it. He was of the opinion that respondent could do such work as long as it was not fatiguing or too confining and no lifting of anything was required which would accelerate the heart action.

This medical witness was still of the opinion at the time of the trial that the respondent could not do heavy physical labor, but he could "oversee work" so long as it was not fatiguing. It further appears from his testimony that he could not think of any kind of a job that would not involve fatigue or physical effort. He knew of no job with long hours that would not

mentally and physically fatigue respondent. He testified that, if respondent worked at sufficiently short periods, he might not be fatigued; but that, if the respondent performed a normal man's work, *which he did not believe the respondent could do,* he would be fatigued.

There is other testimony by physicians to the effect that the respondent is wholly disabled so that he is prevented by that disability from engaging in any occupation whatsoever for remuneration or profit. It clearly appears that, if the respondent had qualified himself for office work, his physical condition is such that the hours of confinement necessary to the performance of clerical work would result in fatigue that would be fatal.

We refrain from an extended review of all of the evidence, as no good purpose would be served thereby. The evidence amply sustains the findings of the trial court.

The judgment is affirmed.

STEINERT, C. J., BEALS, GERAGHTY, and ROBINSON, JJ., concur.